IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JAIME ACEVES BUSTAMANTE,

    Plaintiff,

v.                                                            Civ. No. 23-01164 KG/JHR

EDDY COUNTY BOARD OF COMMISSIONERS,
BILLY MASSINGILL, SGT. EDGAR ALEMAN,
CHEYENNE ANDRADE, and MICHAEL NETTLES,

    Defendants.

MEMORANDUM OPINION AND ORDER

This matter comes before the Court on a Motion to Dismiss, filed on December 29, 2023, by Defendants Eddy County Board of Commissioners, Billy Massingill, and Sgt. Edgar Aleman (collectively "County Defendants"). (Doc. 3). Plaintiff Jaime Aceves Bustamante responded on January 26, 2024, (Doc. 8), and County Defendants replied on February 9, 2024, (Doc. 11). Having considered the briefing and the applicable law, the Court denies the Motion.

I.    *Background*[1]

On November 8, 2020, Plaintiff suffered severe injuries after fellow detainees attacked him while housed at the Eddy County Detention Center (Detention Center). (Doc. 1-2) at 1–3. The attack occurred in the Gamma unit of the jail. *Id.* at 2. The Gamma unit appears to have the capacity to house between 22 and 25 detainees. *Id.* Bunk beds line the wall in an "open sleeping arrangement," allowing detainees to freely move about the open area in the center of the room. *Id.*

---

[1] For this Motion, the Court accepts the truth of all well-pled factual allegations in Plaintiff's complaint and draws all reasonable inferences in Plaintiff's favor.

1

Plaintiff alleges County Defendants knew that detainees were at risk of being assaulted by other detainees but did not do enough to ensure the safety of detainees. *Id.* at 5. In the month leading up to the attack on Plaintiff, there were approximately 10–15 other incidents of detainees attacking each other. *Id.* at 4. Five of these attacks were immediately identified on the surveillance cameras, but at least five others were not. *Id.* The attacks that were not immediately identified on the surveillance cameras led to significant injuries. *Id.*

On the day Plaintiff was attacked, Defendant Sgt. Aleman was on duty. *Id.* at 5. Despite his obligation to assure the safety and security of the detainees, Plaintiff was beaten on three separate occasions. *Id.* at 2, 5. The first attack occurred while Plaintiff was sleeping. *Id.* While in his bed, three inmates attacked him, striking him about the head and torso. *Id.* This attack lasted approximately one minute. *Id.* After the first attack, Plaintiff moved into the open area of the Gamma unit. *Id.* at 3. More than ten minutes later, Plaintiff was attacked a second time. *Id.* Like the first attack, this attack lasted for approximately one minute. *Id.* Again, more than ten minutes later, Plaintiff was attacked for a third time. *Id.* This attack appears to have been the most serious. Five detainees joined the three other detainees in beating Plaintiff. *Id.* Together, they punched and kicked Plaintiff in the head and torso. *Id.* They also threw large plastic chairs at him. This went on for more than a minute, until one of the officers on duty intervened. *Id.*

Based on these facts, Plaintiff brings a 42 U.S.C. Section 1983 claim for supervisory liability, individual liability, and municipal liability. Plaintiff alleges that either (1) the Detention Center and Warden Billy Massingill have a policy and practice of failing to assure that guards consistently monitor the surveillance cameras to protect detainees, or (2) Sgt. Edgar Aleman and guards Cheyenne Andrade and Michael Nettles were deliberately indifferent to their responsibility to monitor security cameras in order to keep detainees safe. *Id.* at 4. Plaintiff

further alleges that the County Defendants' failure to monitor the surveillance cameras caused Plaintiff's injury. *Id.* at 5.

II. Legal Standard

   A. Motion to Dismiss Under Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a claim for "failure to state a claim upon which relief can be granted." A complaint may survive a motion to dismiss only if it contains sufficient facts, accepted as true, to state a claim to relief that is plausible on its face. *Employees' Ret. Sys. of R.I. v. Williams Cos., Inc.*, 889 F.3d 1153, 1161 (10th Cir. 2018) (citation omitted); *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining to survive dismissal, complaint must "state a claim to relief that is plausible on its face"). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Free Speech v. Fed. Election Comm'n*, 720 F.3d 788, 792 (10th Cir. 2013) (citation omitted).

In making this plausibility assessment, courts "accept as true 'all well-pleaded factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff.'" *Schrock v. Wyeth, Inc.*, 727 F.3d 1273, 1280 (10th Cir. 2013) (citation omitted). As a result, a court "may not dismiss on the ground that it appears unlikely the allegations can be proven." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008). "[T]he degree of specificity necessary to establish plausibility and fair notice, and therefore the need to include sufficient factual allegations, depends on context." *Id.* at 1248. Accordingly, a court should conduct its plausibility and sufficiency analyses on a case-by-case basis. *Id.* However, "[p]laintiffs must nudge the claim across the line from conceivable or speculative to plausible." *Brooks v. Mentor*

*Worldwide LLC*, 985 F.3d 1272, 1281 (10th Cir. 2021) (citing *Brown v. Montoya*, 662 F.3d 1152, 1162–63 (10th Cir. 2011).

   B. *Qualified Immunity*

Qualified immunity protects government employees acting under color of state law from suit unless their conduct violates "clearly established" federal law. *Pearson v. Callahan*, 555 U.S. 223, 231–32 (2009). Qualified immunity is not a defense, but rather "an immunity from suit" intended to shield state actors from the burden of unnecessary trial and discovery. *Id.* Whether a government employee is entitled to qualified immunity should therefore be resolved "at the earliest possible stage in litigation." *Id.* at 232 (internal citation omitted). That said, qualified immunity is typically resolved at summary judgment. *See Peterson v. Jensen*, 371 F.3d 1199, 1201 ("[S]ummary judgment provides the typical vehicle for asserting a qualified immunity defense"). If a defendant raises qualified immunity on a motion to dismiss, they are subject to a more challenging standard of review. *Id.* (citing *Lone Star Indus., Inc. v. Horman Family Trust*, 960 F.2d 1917, 920 (10th Cir. 1992) ("A motion to dismiss for failure to state a claim is viewed with disfavor, and is rarely granted.").

On a motion to dismiss based on qualified immunity, courts must consider whether: (1) the facts alleged "make out a violation of a constitutional right," and (2) "the right at issue was clearly established at the time of defendant's alleged misconduct." *Leverington v. City of Colorado Springs*, 643 F.3d 719, 732 (10th Cir. 2011) (quoting *Pearson*, 555 U.S. at 232). The plaintiff must then overcome a "heavy two-part burden" of showing both (1) and (2). *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014) (quoting *Archuleta v. Wagner*, 523 F.3d 1278, 1283 (10th Cir. 2008). The Court may use its "sound discretion" in determining which prong to address first. *Pearson*, 555 U.S. at 236 (2009).

4

While the *Twombly* standard may have "greater bite" in the qualified immunity context, there is no heightened pleading standard for cases in which a defendant claims qualified immunity. *Robbins*, 519 F.3d at 1249. The complaint does not need to include "all the factual allegations necessary to sustain a conclusion that defendant violated clearly established law." *Id.* Instead, the court considers whether the complaint contains factual matter that, if taken as true, states a claim that a defendant violated a plaintiff's clearly established constitutional rights. *Iqbal*, 556 U.S. at 666.

*III.   Discussion*

In their Motion, County Defendants contend that Defendants Massingill and Sgt. Aleman are entitled to qualified immunity. (Doc. 3) at 5. County Defendants further contend that Plaintiff fails to allege sufficient facts to maintain his supervisory claim against Defendants Massingill and Sgt. Aleman. (Doc. 3) at 4–5. Finally, County Defendants argue that Plaintiff's municipal liability claim fails because none of the individually named defendants violated Plaintiff's constitutional rights. (Doc. 3) at 7–8. The Court addresses each argument in turn.

   *A.   Qualified Immunity*

The Court first considers County Defendants' argument that Defendants Massingill and Sgt. Aleman are entitled to qualified immunity. As County Defendants acknowledge, to survive a motion to dismiss, a plaintiff must show that (1) a constitutional violation occurred, and (2) "the constitutional right was clearly established at the time of the alleged violation." *Doe v. Woodard*, 912 F.3d 1278, 1289 (10th Cir. 2019). County Defendants argue that Plaintiff has failed to satisfy either prong of the qualified immunity analysis. (Doc. 3) at 5–7; (Doc. 11) at 7. The Court disagrees.

5

Plaintiff contends he alleges sufficient facts to plausibly allege a violation of his Fourteenth Amendment right to be free of harm from other inmates. (Doc. 8) at 1. Plaintiff's complaint is not the paragon of clarity; however, the Court understands Plaintiff's claim to be that he was subject to unconstitutional conditions of confinement while he was a detainee. Although the Fourteenth Amendment Due Process Clause "governs a pretrial detainee's claim of unconstitutional conditions of confinement, the Eight Amendment standard provides the benchmark for such claims." *Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir. 1998).

In accordance with the Eighth Amendment, jail officials must provide humane conditions of confinement, including taking "reasonable measures to guarantee the safety of the inmates." *Bloom v. Pompa*, 654 Fed. Appx. 930, 932 (10th Cir. 2016) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). "This duty includes a responsibility to protect prisoners from violence inflicted by other inmates." *Id.* (citing *Farmer*, 511 U.S. at 833–34). A prison official fails to meet this duty—and thereby violates the Eighth Amendment—only when two requirements are met: (1) the alleged deprivation must be sufficiently serious under an objective standard, and (2) the prison official must have had subjective knowledge of the risk of harm. *Howard v. Waide*, 534 F.3d 1227, 1236 (10th Cir. 2008) (citing *Farmer*, 511 U.S. at 834, 837).

At this stage of the proceeding, the Court finds Plaintiff satisfies both prongs. For the first prong, the Court finds Plaintiff alleges facts indicating that Plaintiff's injury was sufficiently serious, and County Defendants argue to the contrary. Plaintiff, for his part, alleges that he was attacked three times in a 20–30 minute period, and the "third attack was a brutal beating that caused severe injury." (Doc. 1-2) at 2–3. Taking these facts as true and drawing all reasonable inferences in favor of Plaintiff, the Court concludes a brutal beating causing serve injury is a sufficiently serious injury.

To satisfy the second prong, a plaintiff must show that prison officials "had subjective knowledge of the risk of harm." *Howard*, 534 F.3d at 1236. This requires an official "know[] of and disregard[] an excessive risk to inmate health and safety." *Farmer*, 511 U.S. at 837. "This knowledge may be proved 'in the usual ways, including inference from circumstantial evidence, and a fact-finder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Howard*, 534 F.3d at 1237 (quoting *Farmer*, 511 U.S. at 842).

Here, Plaintiff alleges there were at least 10–15 incidents of detainees attacking each other at the Detention Center the month preceding the attack on him. (Doc. 1-2) at 4. Plaintiff further alleges that some of these attacks "were immediately identified on the surveillance cameras…and guards intervened immediately and prevented significant injury." *Id.* However, at least five of these attacks were not identified on surveillance cameras, and this led to significant inmate injuries. *Id.* As it relates to Defendants Massingill and Sgt. Aleman, Plaintiff alleges Defendant Massingill was the Warden responsible for supervising the safety and security of the Detention Center, and Defendant Sgt. Aleman was the supervisor on duty when Plaintiff was attacked. (Doc. 1-2) at 1–2.

The Court infers that Defendants Massingill and Sgt. Aleman knew that detainees were at substantial risk of being harmed by violent attacks from other detainees, but they chose to disregard such risk. In so finding, the Court notes the number of attacks that occurred the month preceding the attack on Plaintiff, and the allegations that five of those attacks were not identified on surveillance cameras, which led to significant inmate injuries. Plaintiff has therefore satisfied the second prong of the Eighth Amendment analysis. Thus, the Court concludes that Plaintiff has sufficiently alleged a clearly established violation of his constitutional right to humane conditions of confinement.

B.  *Supervisory Liability*

Plaintiff must still overcome one more obstacle in order to maintain his claims against Defendants Massingill and Sgt. Aleman. As County Defendants point out, Section 1983 does not provide for a claim of respondeat superior liability. Thus, to establish supervisory liability, a plaintiff must show "an affirmative link" between each defendant and the constitutional deprivation. *Perry v. Durborow*, 892 F.3d 1116, 1121 (10th Cir. 2018) (citation omitted). A plaintiff can show such a link by demonstrating: "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." *George ex rel. Bradshaw v. Beaver Cnty. ex rel. Beaver Cnty. Bd. Of Comm'rs*, 32 F.4th 1246, 1255 (10th Cir. 2022) (citation omitted).

In this case, Plaintiff alleges that Defendant Massingill had a de facto policy of failing to assure that Detention Center officials monitored surveillance cameras to safeguard detainees. (Doc. 1-2) at 5. Plaintiff further alleges that Defendant Sgt. Aleman was on duty at the time Plaintiff was attacked and had a responsibility to monitor the Detention Center's security cameras to safeguard detainees. *Id.* Based on these allegations, the Court infers that Defendant Massingill either promulgated, created, implemented, or possessed responsibility for a policy that allowed Detention Center officials to ignore their responsibility to adequately monitor detainees despite knowing the serious risk of harm they posed to other detainees. Moreover, the Court infers that Defendant Sgt. Aleman, as the supervisor on duty at the time, implemented this alleged unconstitutional policy. Thus, Plaintiff has satisfied elements (1) and (3), as explained in the previous section, therefore the question remains as to whether County Defendants' alleged policy caused Plaintiff's constitutional harm.

Taking the well-pled allegations in the complaint as true and drawing all reasonable inferences in favor of the Plaintiff, the Court determines that Plaintiff has sufficiently alleged that County Defendants' policy of failing to adequately monitor detainees caused Plaintiff's constitutional harm. Specifically, Plaintiff alleges that County Defendants' failure to monitor security cameras and to identify the threat to Plaintiff caused Plaintiff's injury. (Doc. 1-2) at 5. At the motion to dismiss stage, it is enough that Plaintiff alleges causation without providing evidence. *See, e.g., Hunt v. Uphoff*, 199 F.3d 1220 (10th Cir. 1999) (denying a motion to dismiss based on plaintiff's allegations that his heart attack was caused by inadequate medical treatment.). Based on these facts, County Defendants' failure to adequately monitor the surveillance cameras prevented them from ensuring Plaintiff's safety during his period of confinement. Had County Defendants noticed either the first or second attack on Plaintiff, they would have been able to take appropriate measures to ensure his safety before he suffered significant injuries during the third attack. For now, at least, Plaintiff can maintain his claims against Defendants Massingill and Sgt. Aleman.

C. *Municipal Liability*

Finally, County Defendants argue Plaintiff's municipal liability claim against Eddy County fails as a matter of law. County Defendants' argument is predicated on this Court finding that Defendants Massingill and Sgt. Aleman did not commit a constitutional violation. (Doc. 3) at 7–8; (Doc. 11) at 7. However, as mentioned above, the Court determines that Plaintiff alleges sufficient facts to find that Defendants Massingill and Sgt. Aleman violated his constitutional right. Thus, Defendant's argument fails.

Moreover, in the Tenth Circuit, a municipal policy or custom can take several forms:

(1) A formal regulation or policy statement; (2) an informal custom amounting to widespread practice that, although not authorized by written law or express

municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

*Waller v. City and Cnty. of Denver*, 932 F.3d 1277, 1283 (10th Cir. 2019) (citation omitted). "After establishing a municipal policy or custom, a plaintiff must demonstrate a direct causal link between the policy or custom and the injury alleged." *Id.* at 1284 (citation and internal quotation marks omitted). At this point, the Court concludes Plaintiff alleges enough facts to maintain his municipal liability claim. As mentioned above, Plaintiff alleges Eddy County and Defendant Massingill had a de facto policy of failing to assure Detention Center officials monitored surveillance cameras to safeguard detainees, and this policy caused Plaintiff's injury. Such a policy clearly satisfies the form that a municipal policy or custom may take.

IV.   Conclusion

For the reasons discussed, the Court determines Defendants Massingill and Sgt. Aleman are not entitled to qualified immunity at this stage of the proceeding and can be held liable for violating Plaintiff's constitutional rights. Thus, the Court denies County Defendants' Motion to Dismiss.

IT IS SO ORDERED.

UNITED STATES DISTRICT JUDGE